UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES MEHALICK,

                              Plaintiff,                9:24-cv-00775 (BKS/TWD)

v.

CORRECTION OFFICER STOWELL, SERGEANT
HUTCHINS, CORRECTION OFFICER LEESON,
CORRECTION OFFICER DONALD WARD,
CORRECTION OFFICER STRATE, CORRECTION
OFFICER "BILLIE," LIEUTENANT AULT,
UNIDENTIFIED CORRECTION OFFICERS,
                              Defendants.
_____

**Appearances:**

*For Plaintiff Charles Mehalick:*
Fred Lichtmacher
The Law Office of Fred Lichtmacher P.C.
116 West 23rd Street, Suite 500
New York, NY 10011

*For Defendants:*
Letitia James
Attorney General of the State of New York
Elizabeth V. Lombardi
Assistant Attorney General
300 S. State Street
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiff Charles Mehalick, an inmate incarcerated in the State of New York, brings this action asserting claims under 42 U.S.C. § 1983 against Corrections Officers Stowell, Leeson, Ward, Strate, and Billie, Sergeant Hutchins, Lieutenant Ault, and unidentified correctional officers for excessive force, failure to intervene, and deliberate medical indifference, in violation of the Eighth Amendment. (*See generally* Dkt. No. 16). Presently before the Court is Defendants' partial motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1] (Dkt. No. 20). The motion is fully briefed. (Dkt. Nos. 20, 23, 24). For the reasons that follow, Defendants' motion is granted in part and denied in part.

**II.    RELEVANT FACTS[2]**

On December 6, 2021, Plaintiff was in transit from Downstate Correctional Facility to Cape Vincent Correctional Facility. (Dkt. No. 16, ¶ 9). "Due to an inmate testing positive for covid, the transport stopped, and quarantined at Gouverneur Correctional Facility for fourteen days." (*Id.* ¶ 10). That morning, food was brought directly to "the inmates' cell block due to the quarantine," but not all of the inmates received food. (*Id.* ¶¶ 11, 12). Plaintiff and another inmate asked Defendant Ward "about the situation," who responded by calling Defendant Hutchins "to address the issue." (*Id.* ¶ 12).

---

[1] Defendants do not seek dismissal of the excessive force claims against Defendants Stowell, Strate, and Hutchins. (*See generally* Dkt. No. 20).

[2] The facts are drawn from the Amended Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant Hutchins and several officers arrived "demonstrably angry[,] and ordered the inmates to put their hands on their lockers." (*Id.* ¶ 13). Plaintiff "complied with the order." (*Id.* ¶ 14). However, "apparently frustrated with being asked for a second day to feed unfed inmates, including [Plaintiff], several officers started throwing chairs, cursing and punching inmates."[3] (*Id.* ¶¶ 13, 15). Defendant Stowell approached Plaintiff, "who had his hands on his locker," and swung at him but missed, striking the bunk behind him instead. (*Id.* ¶¶ 16, 17). Defendant Stowell then grabbed Plaintiff and flipped him over, during which Plaintiff's back hit the locker and started to bleed. (*Id.* ¶ 18). Defendant Stowell put Plaintiff on the bed on his right side and began choking him. (*Id.* ¶ 19). Although Defendants Hutchins, Ward, Leeson, Billie, and Strate "were all present on the scene," "none of them intervened to stop the beating from happening, despite having a reasonable opportunity to do so." (*Id.* ¶ 20). The "abusive behavior" temporarily ceased when an "unidentified" Lieutenant entered. (*Id.* ¶ 21).

After the unidentified Lieutenant left, Defendants Billie and Strate grabbed Plaintiff "from either side, rear cuffed [him], turned [him] around," and Defendant Billie punched him in the stomach. (*Id.* ¶¶ 22, 23). Shortly thereafter, Defendants Billie and Strate proceeded to drag Plaintiff out of the "housing area while still inside the building" and into "the Sally Port area," where they dropped boots in front of Plaintiff and ordered him to put them on. (*Id.* ¶¶ 24, 25, 27). Because Plaintiff was "rear cuffed," however, he was "unable" to put on the boots. (*Id.* ¶ 27). "[W]ith officer [sic] Billie present," Defendant Strate struck Plaintiff in the head with "something hard," rendering Plaintiff unconscious. (*Id.* ¶ 28).

---

[3] Although Plaintiff refers to this incident as occurring on the "second day," the Amended Complaint contains no factual allegations regarding the first day.

3

Plaintiff awakened to being dragged outside by his upper body as his legs trailed behind, wearing only a t-shirt and pants in cold weather. (*Id.* ¶¶ 26, 29). When Plaintiff regained consciousness, he told "the defendants" that "he had a bad shoulder[,] and they maliciously lifted him off the ground by his arms which were behind his back, seriously reinjuring his right shoulder." (*Id.* ¶ 30). Plaintiff was placed against a wall next to other inmates where Defendants Stowell and Strate "were holding inmates as Hutchins was taking turns punching inmates." (*Id.* ¶¶ 31, 32). Defendant Hutchins punched Plaintiff twice in the stomach and once in the face, cracking Plaintiff's tooth. (*Id.* ¶ 32). Plaintiff "was placed against the wall" "in the Small Box area" "face first and an Unidentified Correction Officer smashed [Plaintiff's] face against the wall." (*Id.* ¶¶ 33, 34).

"After the incident in the Small Box area the officers brought out bodycams and taped [Plaintiff] and other inmates being walked to medical." (*Id.* ¶¶ 34, 36). "Several inmates arrived at medical, but the officers would not let them be seen by healthcare professionals." (*Id.* ¶ 36). The officers "turned the cameras off and then brought the inmates, including [Plaintiff]," to the Special Housing Unit (the "SHU"). (*Id.*). At the intake area of the SHU, a nurse performed a "quick, perfunctory examination" of Plaintiff but did not provide any remedial treatment. (*Id.* ¶ 37). An officer also took photographs of Plaintiff's injuries. (*Id.* ¶ 38). Plaintiff's physical injuries include "an exacerbation of a shoulder injury, dental injuries requiring a dental procedure at Upstate several weeks after the beating, numerous abrasions and contusions, and an injury to [his] right foot which was bleeding from him being dragged." (*Id.* ¶ 51). During the "first day or two" in the SHU, "and in the care of the same defendant officers," Plaintiff "was not fed, not given toilet paper, and did not receive adequate warm clothing." (*Id.* ¶ 40).

4

"[J]ust days after the inmates were beaten[,]" Defendant Ault conducted a disciplinary hearing for Plaintiff and other inmates, "over false allegations" of "inciting a riot and attempted assault on officer Stowell," which lasted about one week. (*Id.* ¶¶ 43, 44). At the hearing, Defendant Ault "first hand observed that [Plaintiff] was in severe discomfort," and he was "presented with the photographs of plaintiff's injuries." (*Id.* ¶¶ 71, 72). Defendant Ault thus knew "that the plaintiff was in pain [and] was obviously seriously injured," yet "failed to take any steps to secure" Plaintiff's "needed medical treatment[,] causing an exacerbation of his most serious injuries." (*Id.* ¶ 47).[4]

While Plaintiff was in SHU he was "in the care of the same Defendant officers." (*Id.* ¶ 40). Plaintiff "made several documented requests for medical treatment" and "complained" to Defendants about his "extreme pain" from the events. (*Id.* ¶ 42, 52). Defendants "ignored" Plaintiff's pleas for medical treatment and "declined to take him for the healthcare he needed, exacerbating the injuries and pain from [his] injuries." (*Id.*). Over the course of about four weeks, Plaintiff "experienced extreme pain, discomfort and loss of bodily functions due to his serious medical issues not being addressed." (*Id.* ¶ 54). Plaintiff received "real medical care," including a "requir[ed]" dental procedure, for the first time when he was transferred out of Gouverneur to Upstate Correctional Facility about four weeks after the beating. (*Id.* ¶¶ 51, 53).

### III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"

---

[4] Defendant Ault ultimately ruled against the inmates and sentenced them to six months in the SHU. (Dkt. No. 16, ¶¶ 44, 45). Plaintiff served approximately five months and two weeks in the SHU, and was released two weeks before his sentence was to expire "after there was a determination that there was reason to believe the hearing tapes "were subject to tampering." (*Id.* ¶ 49, 50). Plaintiff alleges that "Prisoner Legal Services" was involved in securing the reversal of Plaintiff's "tickets." (*Id.* ¶ 48).

*Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## IV.     DISCUSSION

### A.     Materials Outside the Complaint

Defendants have submitted a declaration by Gina Orr, (Dkt. No. 20-2), the "current[] Inmate Records Coordinator 2" at Gouverneur, (*id.* ¶ 1), in support of their motion to dismiss the claims against Defendant Billie, (Dkt. No. 20-3, at 7 n.1).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby

6

rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

Here, the Amended Complaint does not "refer to" this affidavit and Plaintiff "did not rely on [it] in drafting" the Amended Complaint. *Chambers*, 282 F.3d at 154. Moreover, "a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants . . . in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991)). Accordingly, the Court declines to consider Orr's declaration at this stage.[5]

### B. Excessive Force and Failure to Intervene

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

The prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: 1) subjectively, that the defendant acted wantonly and in bad faith, and 2) objectively, that the defendant's actions violated

---

[5] Having declined to consider Orr's declaration, which Defendants submitted in support of their request that Defendant "Billie" be dismissed as a Defendant in this case because he has never been employed by Gouverneur Correctional Facility, (Dkt. No. 20-3, at 7 n.1), the Court declines to dismiss Defendant Billie on that basis.

7

"contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

The prohibition against cruel and unusual punishment also imposes on law enforcement officials, including prison officials, "an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers." *Cicio v. Lamora*, No. 9:08-cv-0431, 2010 WL 1063875, at *8, 2010 U.S. Dist. LEXIS 28779, at *23 (N.D.N.Y. Feb. 24, 2010) (a corrections officer who does not participate in, but is present when an assault on an inmate occurs may still be liable for any resulting constitutional deprivation); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [Section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted). "To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use . . . of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Evans v. Murphy*, No. 12-cv-365, 2014 WL 4437771, at *9, 2014 U.S. Dist. LEXIS 33845, at *30 (W.D.N.Y. Mar. 13, 2014) (citing *Curley*, 268 F.3d at 72). However, "[w]here the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable. . . ." *Johnson v. Mason*, No. 22-cv-590, 2023 WL 10365204, at *10, 2023 U.S. Dist. LEXIS 229603, at *27–28 (N.D.N.Y. Dec. 27, 2023) (citations omitted) (collecting cases), *report-recommendation adopted by* 2024 WL 396679, 2024 U.S. Dist. LEXIS 18356 (N.D.N.Y. Feb. 2, 2024).

### 1. Defendant Ault

Defendants move to dismiss the claims of excessive force and failure to intervene against Defendant Ault for failure to state a claim. (Dkt. No. 20-3, at 12, 17). Plaintiff concedes in his response to Defendants' motion that the Amended Complaint does not allege that Lt. Ault used force against Plaintiff or that Lt. Ault was present for the beatings. (Dkt. No. 23, at 7–8). The Second Cause of Action for failure to intervene expressly excludes Lt. Ault, but the First Cause of Action, for excessive force, does not. (Dkt. No. 16, 7–8). Accordingly, Defendants' motion to dismiss the claim of excessive force against Defendant Ault is granted.

### 2. Defendants Ward and Leeson

Defendants seek dismissal of Plaintiff's excessive force and failure to intervene claims against Defendants Ward and Leeson on the ground that the Amended Complaint fails to allege their personal involvement. (Dkt. No. 20-3, at 10–12). Personal involvement is an essential element of any claim brought under Section 1983. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Thus, "a plaintiff must . . . prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "[I]n a claim for excessive force or failure to intervene in excessive force, 'courts in the Second Circuit have allowed plaintiffs to use a flexible approach, recognizing the difficulty that plaintiffs may have in pleading who did what.'" *Green v. Garcia*, No. 18-cv-1745, 2020 WL 1467359, at *5, 2020 U.S. Dist. LEXIS 55164, at *14 (S.D.N.Y. Mar. 25, 2020). "Even so, Plaintiff must still allege facts that support a plausible inference of personal involvement." *Id.* 2020 WL 1467359, at *5, 2020 U.S. Dist. LEXIS 55164, at *14. For example, courts have found allegations sufficient to allege personal involvement where a plaintiff states "in the facts section of his [complaint] the names of each person 'who was present during the assault[ ], and that these [D]efendants *either* directly participated in the

9

excessive force *or* failed to intervene.'" *Id.* 2020 WL 1467359, at *5, 2020 U.S. Dist. LEXIS 55164, at *15 (quoting *Snoussi v. Bivona*, No. 05-cv-3133, 2010 WL 3924255, at *3, 2010 U.S. Dist. LEXIS 110568, at *13 (E.D.N.Y. Feb. 17, 2010), *report and recommendation adopted*, 2010 WL 3924683, 2010 U.S. Dist. LEXIS 103066 (E.D.N.Y. Sept. 29, 2010). Here, Plaintiff alleges that Defendants Ward and Leeson were "present on the scene of the physical abuse of plaintiff" and did not "intervene[] to stop the beating from happening, despite having a reasonable opportunity to do so." (Dkt. No. 16, ¶¶ 12, 20). However, as Defendants note, the Amended Complaint only alleges failure to intervene as to Defendants Ward and Leeson and contains no allegations that these Defendants engaged in excessive force. (Dkt. No. 20-3, at 12). Plaintiff does not include any argument regarding excessive force as to either of these Defendants in his response; his arguments solely concern failure to intervene.[6] (Dkt. No. 23, at 7). Accordingly, Defendants' motion to dismiss is granted as to the claims of excessive force (First Cause of Action) and denied as to the failure to intervene claims (Second Cause of Action) against Defendant Ward and Defendant Leeson.

### 3. Defendants Strate, Billie, and Hutchins

Defendants also move to dismiss the failure to intervene claim against Defendants Strate, Billie, and Hutchins, arguing that the Amended Complaint "contains impermissible group pleadings" and fails to allege that these Defendants had "a reasonable opportunity" to stop the alleged excessive force. (Dkt. No. 20-3, at 16–19). Plaintiff opposes dismissal. (Dkt. No. 23, at 5–7).

---

[6] It appears Plaintiff misread Defendants' motion. (*See* Dkt. No. 23, at 7 ("The excessive force claim is not challenged via defendants' motion.")).

10

The Amended Complaint alleges that Defendant Hutchins arrived at Plaintiff's cell block "demonstrably angry" with "several officers." (Dkt. No. 16, ¶ 13). Plaintiff alleges that Defendants Hutchins, Billie, and Strate were all "present on the scene" while Plaintiff was subjected to excessive force by Defendant Stowell, (*id.* ¶¶ 17–20), "and none of them intervened to stop the beating from happening, despite having a reasonable opportunity to do so," (*id.* ¶ 20). Further, Defendants Billie and Strate are alleged to have subjected Plaintiff to excessive force in the presence of each other. (*Id.* ¶¶ 22, 23 (alleging Strate and Billie "grabbed [Plaintiff] from either side, rear cuffed [him], turned [him] around and . . . Billie punched [Plaintiff] in the stomach"), 28 (alleging Strate "struck [Plaintiff] in the head with something hard" "with officer Billie present")). Similarly, Defendant Strate was "holding inmates as Sergeant Hutchins was taking turns punching [the] inmates." (*Id.* ¶ 32). The allegations that Defendants Strate, Billie, and Hutchins were present during, or participated in, the alleged use of force are sufficient at the pleading stage to allow a plausible inference that they both participated in the alleged use of force and failed to intervene. *See Johnson*, 2023 WL 10365204, at *10, 2023 U.S. Dist. LEXIS 229603, at *27–28. Furthermore, in view of the allegations that at least five officers and several inmates were involved in the alleged altercation, and that at one point Plaintiff was unconscious, (Dkt. No. 16, ¶ 28), the Court does not find Plaintiff's failure to identify which Defendant was allegedly involved in the use of force and which Defendant allegedly failed to intervene to be fatal to either claim. *Johnson v. Mason* (*Johnson II*), No. 9:22-cv-590, 2024 WL 396679, at *7, 2024 U.S. Dist. LEXIS 18356, at *20 (N.D.N.Y. Feb. 2, 2024) ("Where a plaintiff has properly alleged a constitutional violation, he is entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene." (quoting *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 725

11

(S.D.N.Y. 2015)); *see also Alexander v. Racette*, No. 17-cv-309, 2020 WL 5802273, at *11, 2020 U.S. Dist. LEXIS 178971, at *29 (N.D.N.Y. Sept. 29, 2020) (declining to grant summary judgment based on a lack or personal involvement where "acts complained of by the plaintiff . . . are likely to have prevented plaintiff from identifying which [of the] defendant officers specifically engaged in the bad acts").

Accordingly, Defendants' motion to dismiss the failure to intervene claim against Defendants Strate, Billie, and Hutchins is denied.

### 4.    **Defendant Stowell**

Defendants seek dismissal the failure to intervene claim against Defendant Stowell, arguing that there are "no allegations" with regard to Defendant Stowell's failure to intervene. (Dkt. No. 20-3, at 17). Plaintiff opposes dismissal. (Dkt. No. 23, at 5–7).

The Amended Complaint alleges that Defendant Stowell directly participated in the alleged excessive force inside the cell block, near the inmate lockers. (Dkt. No. 16, ¶¶ 16–19). However, the Amended Complaint also alleges that after Plaintiff was taken outside, where he was again allegedly subjected to excessive force, Defendant Stowell was "holding inmates as Sergeant Hutchins was taking turns punching inmates, including [Plaintiff]." (*Id.* ¶ 32). Plaintiff's allegation that Defendant Stowell was outside and holding inmates, including Plaintiff, while Defendant Hutchins struck them, is sufficient to allow a plausible inference that Defendant Stowell failed to intervene. (*See id.* ¶¶ 17–19, 32). Further, for as discussed above, pleading failure to intervene, in the alternative, is permissible under the circumstances alleged in this case. Accordingly, Defendants' motion to dismiss the failure to intervene claim against Defendant Stowell is denied.

### C. Deliberate Indifference

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "The standard of deliberate indifference includes both subjective and objective components." *Id.* "Determining whether a deprivation is an objectively serious deprivation entails two inquiries": (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).

The first inquiry under the objective component requires examining "whether the prisoner was actually deprived of adequate medical care." *Id.* at 279. Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id.* at 279–80. The second inquiry under the objective component requires examining whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. If the "unreasonable care" consists of a failure to provide treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (alteration in original) (quoting *Chance*, 143 F.3d at 702). "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower," *id.*, and it is "the particular risk of harm

13

faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant," *Smith*, 316 F.3d at 186 (citing *Chance*, 143 F.3d at 702–03).

As to the subjective component of a deliberate indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind." *Chance*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). The defendant's "state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. That is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Nor does the "mere disagreement over the proper treatment . . . create a constitutional claim[;] [s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

A claim of deliberate indifference may be brought against medical or non-medical personnel. *Dumel v. Westchester Cnty.*, No. 19-cv-2161, 2021 WL 738365, at *10, 2021 U.S. Dist. LEXIS 35470, at *30 (S.D.N.Y. Feb. 25, 2021). Further, "that Plaintiff has accused correctional officer[s] of deliberate indifference does not . . . alter the relevant analysis: 'The same standards apply to a claim of deliberate indifference to serious medical needs on the part of nonmedical prison personnel.'" *Id.*, 2021 WL 738365, at *10, 2021 U.S. Dist. LEXIS 35470, at *30 (quoting *Feliciano v. Anderson*, No. 15-cv-4106, 2017 WL 1189747, at *13, 2017 U.S. Dist. LEXIS 47893, at * (S.D.N.Y. Mar. 30, 2017)). Thus, "to establish a deliberate-indifference claim

against nonmedical personnel, a plaintiff must prove that [the] nonmedical prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Id.*, 2021 WL 738365, at *10, 2021 U.S. Dist. LEXIS 35470, at *30–31 (quotation omitted)).

Here, Plaintiff alleges that he suffered, *inter alia*, dental damage, a reinjury to his right shoulder, "numerous abrasions and contusions," and an injury on his right foot. (Dkt. No. 16, ¶ 51). Plaintiff "made several documented requests for medical treatment," as well as verbal complaints to Defendants about his extreme pain, "but they declined to take him for the healthcare he needed, exacerbating the injuries and pain from said injuries." (*Id.* ¶¶ 42, 52). Plaintiff further alleges that the "defendant officers . . . intentionally delayed . . . obtaining [Plaintiff] medical care to cover up their abuse" and to prevent "the injuries they inflicted on [him] to be well documented." (*Id.* ¶¶ 70, 74). During the relevant period in which Plaintiff was under Defendants' supervision, he experienced "extreme pain, discomfort, and loss of bodily functions due to his serious medical issues not being addressed which could have been addressed the day of the beating." (*Id.* ¶ 54). Only when Plaintiff was transferred to a different facility did he receive "real medical care," including a "require[ed] dental procedure." (*Id.* ¶¶ 51, 53).

Defendants do not argue that Plaintiff has failed to plead that this was, in objective terms, sufficiently serious. Rather, Defendants argue that the Amended Complaint fails to allege: 1) the personal involvement of Defendants Stowell, Leeson, Ward, Strate, and Billie and contains "impermissible group pleadings," (Dkt. No. 20-3, at 25–26), and 2) that Defendants Ault and Hutchins knew of and disregarded an excessive risk of substantial harm to Plaintiff, (*id.* at 21–24). Defendants argue, alternatively, that they are entitled to qualified immunity. (*Id.* at 27–28).

15

### 1. Defendants Hutchins, Ward, Leeson, Billie, Stowell, and Strate

With respect to Defendants Hutchins, Ward, Leeson, Billie, Stowell, and Strate, Defendants argue that the Amended Complaint contains "impermissible group pleadings" and fails to provide fair notice of the claims.[7] (Dkt. No. 20-3, at 26). Plaintiff opposes dismissal by reciting the legal standard applicable to deliberate indifference to medical care and quoting twenty-two paragraphs from the Amended Complaint, but has provided no meaningful analysis. (Dkt. No. 23, at 8–12).

Here, Plaintiff alleges that immediately after the alleged use of excessive force "the officers brought out body cams-and taped [Plaintiff] and other inmates being walked to medical." (Dkt. No. 16, ¶ 34). After Plaintiff and "[s]everal inmates arrived at medical," "the officers . . . turned the cameras off" and "would not let the [inmates] be seen by healthcare professionals." (*Id.* ¶ 36). "[T]he officers . . . then brought the inmates, including [Plaintiff], to [the] SHU." (*Id.*). In the SHU "intake area," "[a] nurse performed a quick, perfunctory examination" of Plaintiff but "gave him no remediatl [sic] for his serious injuries." (*Id.* ¶ 37).

Plaintiff's deliberate indifference claim against Defendants Hutchins, Ward, Leeson, Billie, Stowell, and Strate fails because the Amended Complaint does not adequately allege personal involvement by these Defendants. Plaintiff does not identify the individuals who allegedly brought Plaintiff and "the other inmates" to medical but "would not let them be seen" by name (or even as Defendants)—he identifies them only as "the officers." (*Id.* ¶¶ 34, 36). Plaintiff's claims that his "documented requests" for medical treatment were "ignored" are also deficient as he does not identify to whom he made these "requests" and alleges only that they

---

[7] Although Defendants address the deliberate indifference claim against Hutchins separately, their argument as to Hutchins is also based on lack of personal involvement differs only to the extent that it addresses his supervisory status. (Dkt. No. 20-3, at 22–25). For purposes of efficiency, the Court addresses these arguments together.

"were ignored at Gouverneur Correctional Facility." (*Id.* ¶ 42). Accordingly, Plaintiff's deliberate indifference claim against Defendants Ward, Leeson, Billie, Stowell, and Strate is dismissed. *See Lloyd v. Regisford*, No. 22-cv-03744, 2023 WL 5935756, at *3, 2023 U.S. Dist. LEXIS 160835, at *9 (S.D.N.Y. Sept. 12, 2023) (dismissing deliberate indifference claim for failure to plead personal involvement where the plaintiff failed "to allege which Defendants were involved in the deliberate indifference to his medical needs"); *see also*, *e.g.*, *Lainez v. Roycroft*, No. 18-cv-6754, 2019 WL 4934009, at *3, 2019 U.S. Dist. LEXIS 173797, at *7 (S.D.N.Y. Oct. 7, 2019) (dismissing deliberate indifference claim for failure to allege personal involvement where the complaint failed "to identify which medical professionals treated him" on sick calls and "[i]nstead . . . lumped together all five defendants and alleged they all were responsible for his misdiagnosis and mistreatment"); *Shand v. Connecticut Dep't of Corr.*, No. 21-cv-523, 2022 WL 503952, at *7, 2022 U.S. Dist. LEXIS 29407, at *21–22 (D. Conn. Feb. 18, 2022) (dismissing deliberate indifference claim where the plaintiff failed to "identify any particular defendant who treated him or denied a request for treatment" and "merely assume[d] that all the medical staff defendants were aware of his medical issues").

Plaintiff's deliberate indifference claim against Defendant Hutchins is denied for the same reasons: although Plaintiff may have sufficiently alleged Hutchins' involvement in excessive force, he fails to allege facts allowing a plausible inference that Hutchins was among "the officers" who "would not let [Plaintiff] be seen by healthcare professionals." (Dkt. No. 16, ¶ 36). Nor does Plaintiff allege that Hutchins was aware that "officers" had not allowed Plaintiff to be seen by medical staff. And to the extent Plaintiff seeks to hold Hutchins liable as "the supervisor present and participating in the beatings," (*id.* ¶ 73), it is well-settled that the "[a] defendant's position as a supervisor does not impute personal involvement to that individual—

17

liability under Section 1983 requires that the 'defendant, through the official's own individual actions, has violated the Constitution,'" *Fernandez v. Superintendent, Downstate Corr. Facility*, No. 20-cv-10287, 2022 WL 443646, at *2, 2022 U.S. Dist. LEXIS 26280, at *4 (S.D.N.Y. Feb. 14, 2022) (quoting *Tangreti*, 983 F.3d at 618). Accordingly, Plaintiff's deliberate indifference claim against Hutchins is dismissed.

### 2. Defendant Ault

Defendants seek dismissal of the deliberate indifference to medical needs claim against Defendant Ault on the ground that the Amended Complaint fails to allege facts that would allow a plausible inference that Defendant Ault was aware of Plaintiff's serious medical condition and failed to secure medical treatment. (Dkt. No. 20-3, at 21–22). Plaintiff opposes dismissal. (Dkt. No. 23, at 12–15).

According to the Amended Complaint, Defendant Ault "first hand observed that Plaintiff was in severe discomfort" at a disciplinary hearing "just days after" the alleged excessive force. (Dkt. No. 16, ¶¶ 42, 71). At the hearing, Defendant Ault was "presented with the photographs of plaintiff's injuries" and heard testimony from "multiple inmates." (*Id.* ¶¶ 44, 71, 72). Plaintiff therefore contends that Defendant Ault "knew to a moral certainty that the plaintiff was in pain [and] was obviously seriously injured," yet "failed to take any steps to secure" Plaintiff's "needed medical treatment[,] causing an exacerbation of his most serious injuries." (*Id.* ¶ 47; *see also id.* ¶ 71 (alleging that Ault "first hand observed that [Plaintiff] was in severe discomfort")). However, there are no allegations regarding Plaintiff's appearance following the alleged excessive force, including whether the "abrasions and contusions," or the shoulder, foot, and dental injuries that Plaintiff allegedly sustained, (*id.* ¶ 51), were visible at the time of the hearing. And although the Amended Complaint alleges that Ault saw "photographs of plaintiff's injuries" at the hearing, there are no facts regarding what Plaintiff complained of, or what Plaintiff's

18

condition was at the time hearing, which was several days after the alleged beating. (*Id.* ¶ 71–72). Indeed, the Amended Complaint does not allege any facts regarding the content of Plaintiff's, or any other inmate's, testimony at the hearing. (*See id.* ¶ 44 (alleging that "Hearing lasted about one week and multiple inmates testified")). Nor is there any allegation that Plaintiff made any complaints to Ault or asked Ault for medical treatment. The Court therefore concludes that the Amended Complaint fails to allege facts from which to infer that Ault "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see Webb v. McClain*, No. 23-cv-01618, 2024 WL 1991014, at *2, 2024 U.S. Dist. LEXIS 82099, at *5 (D. Conn. May 6, 2024) (finding complaint, which did "not allege that the [the plaintiff] asked [the officer] for help or that [the officer] saw or knew [the plaintiff] was suffering," failed to allege the defendant officer's "conscious disregard of substantial harm"); *see also Herbert v. Smith*, No. 20-cv-06348, 2022 WL 1644916, at *7, 2022 U.S. Dist. LEXIS 93383, at *19 (S.D.N.Y. May 24, 2022) (finding allegations that sick call slips to were ignored insufficient to satisfy subjective prong, explaining "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them" (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)). Therefore, the deliberate indifference claim as to Defendant Ault is dismissed

Accordingly, Defendants' motion to dismiss Plaintiff's deliberate indifference claim is granted.[8]

## V. CONCLUSION

For these reasons, it is hereby

---

[8] Having concluded Plaintiff's deliberate indifference claim must be dismissed for failure to state a claim, the Court does not reach Defendants' qualified immunity argument.

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 20) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's excessive force claim against Defendants Ault, Ward, and Leeson (First Cause of Action) is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's deliberate indifference to serious medical need claim (Third Cause of Action) is **DISMISSED;** and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 20) is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: December 2, 2024
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge